The next matter, number 23-1810, Joseph Donovan v. the Massachusetts Parole Board. At this time, would counsel for the appellant please introduce himself on the record to begin? Good morning. My name is Paul Donovan, for the appellant, Joseph Donovan. May I please reserve three minutes for questions? You may have two. Please move the microphone up, closer. Thank you. Sorry, I'm a little talker. Good morning. May it please the Court, we are here today because the District Court erred in determining that Donovan's habeas petition was second or successive. In doing so, the Court failed to recognize two important facts. First, for the principles of Magwood to apply, the Supreme Court only requires a new judgment and nothing more. Second, Donovan is serving a new judgment for purposes of Magwood because both the Supreme Court and the Massachusetts Supreme Judicial Court declared that his old judgment was invalid. And he argues to the contrary, rely on insignificant procedural red herring, unsupported by fact or law, and ignore the substantive and practical realities of this case. A judgment is comprised of both the conviction and the sentence. I think maybe one of the main arguments you have to address is that sentence in Diachenko where the SJC says the petitioner is not entitled to be resentenced. Could you address that argument? And for the benefit of the students today, just taking a step back, your client was a juvenile. He was 17 when the incident in this case took place. Is that right? That's correct, Your Honor. My client was a juvenile at the time of the original debate. Let's give the students a bit more about what the case is about. This is a murder conviction of your client when he was a juvenile in the 1990s, although he was not the one who used the knife. Someone he was with used the knife, which killed a Norwegian student somewhere around MIT. Your client was convicted. He then sought a habeas petition from the Federal District Court. So that was number one. Since then, the U.S. Supreme Court has said that for juvenile convictions, it is unconstitutional to deny any possibility of parole. So after that, your client, who had been sentenced to a life sentence without parole, though without parole, was struck. He had a life sentence. He was eligible for parole. He was released for parole. He's out on parole now. Is that correct? He's in this courtroom today. Yes. Okay. And he now wants to invalidate the conviction from the 1990s of first-degree murder. And so in federal court, the question is whether this is, in essence, a different judgment, a new judgment, in which case he doesn't have to go through certain procedural requirements he would otherwise have to go to for a second or successive habeas petition. Is that it? That's much better than I could have done, Your Honor. Thank you. I appreciate it. Now proceed. Now, if you could circle back to the question I asked you, which was about that sentence in Diachenko 1. Thank you, Your Honor. Thank you for the question. Yes, in Diachenko, there is some dicta regarding the juveniles not being resentenced. But I would argue that what they're referring to in Diachenko is the sentencing hearing. What the Supreme Judicial Court was saying in Diachenko was that there's no need for a resentencing hearing because we, in effect, are conducting the resentencing hearing at the appellate level and resentencing the juveniles. So that language they're referring to doesn't mean that they're not being resentenced. The SJC can't engage in illegal fiction and ignore what they've actually done, even if they say they haven't done it. They did resentence Mr. Donovan, along with several other juveniles, as a class. So while they use that language, it only makes sense that they're referring to a resentencing hearing. And that's confirmed in later cases after Diachenko, where Commonwealth v. Costa, where the SJC explained the reason they don't need a resentencing hearing is that we've done the work for the trial court. We've replaced one mandatory sentence with another mandatory sentence. Life without the possibility of parole with life with parole. So, therefore, a resentencing hearing would be useless. There's no need to send the defendants back down to the trial court. And if you look at the Commonwealth v. Battis, the SJC said that the juveniles are receiving the benefit of a resentencing today. In the Massachusetts High Court's decision in Diachenko, have I pronounced it correctly? I believe so, yes. The court looked at the statute which was used to sentence your client to life imprisonment without parole and said the legislature had a severability clause in the statute, which permitted them simply to strike the without parole language and just modify the language of the sentence of the judgment to a life sentence and that no further proceedings were to be had. The state of Massachusetts, which is opposed to this habeas petition, says that was just a ministerial clerical matter. There has been no new judgment. There has been no new hearing at all. So what is the response to the it's the same judgment? Well, again, I would point to the fact that Mr. Donovan is in the courtroom today as evidence that it is not the same judgment. Parole is clearly part of a sentence. Parole eligibility is clearly part of a sentence. That was the whole point of Miller and explicitly says in Miller that parole is part of a sentence. Okay, so that's your first argument. Any modification makes it a new judgment. No, not any modification. What makes it a new judgment under MAGWIP is the invalid prior judgment standard. There was a case recently that came out in the Third Circuit. It's not in our brief because it came out after our brief was filed. It's Inmate Edwards, 98F4, 435, Third Circuit case, came out in 2024. Okay, send us a letter afterwards with the citation. Yes, I will, Your Honor. Thank you. And in the Inmate Edwards case, they addressed this issue for the first time. And they did a very nice job in Inmate Edwards of discussing when we have a new judgment for purposes of MAGWIP because, as you know, MAGWIP wasn't very clear on the issue. And they harmonized all the decisions in the trial. Mr. Donovan, I'm going to permit you more time. I've been keeping track because we took a little bit of time ourselves to explain the case to the students. So you have a few more minutes. Thank you very much. I appreciate that, Your Honor. And so anyway, they did a very good job of harmonizing the cases and when we have a new judgment for purposes of MAGWIP. And they enunciated their holding. It's a very nice bright-line test, when we have a new judgment for purposes of MAGWIP. We have a new judgment for purposes of MAGWIP when a modified or amended judgment is a new judgment for purposes of MAGWIP if the prior judgment was held invalid. Well, that's exactly what happened here. The prior judgment, Donovan's prior judgment, the original judgment was held invalid because it was unconstitutional and it was replaced with a new judgment. The new judgment is the sentence of life without parole. And in fact, if you read Miller's case, Miller uses the word invalid. We have invalidated sentencing schemes that provide that juveniles are not eligible for parole or cannot be eligible for parole. And in Dijanko, they use the same wording. We have now invalidated the sentencing statute that provides that juveniles do not have an opportunity for parole today. So we have an invalid prior judgment, the original judgment. It was replaced with a new judgment, a new sentence. Judgment equals sentence plus conviction. So when Donovan receives his new sentence of life with possibility of parole, he receives a new judgment. So the test when we have a new judgment for MAGWIP really is based on the prior judgment. Was it invalidated? Again, that is exactly what happened here. Miller and Dijanko, Donovan's prior judgment was invalidated. You know, one thing I was wondering is often when a sentence is changed, you do have a new judgment. You have a new piece of paper. In this case, you don't because Dijanko changes it for all 60-something of the juveniles in Massachusetts who are serving life without parole. Does the paper that holds those juveniles at the prison change? Is the minimus then different after Dijanko? Thank you for the question. Excellent question, Your Honor. Exactly. In Commonwealth v. Weaver, the Supreme Judicial Court ruled that a juvenile resentenced under Dijanko is entitled to evidence of his new judgment in the form of a new minimus. Mr. Donovan has a new minimus. We haven't been able to locate it. But he couldn't be in this courtroom today if he didn't have a new minimus because that minimus is the document that instructs the Department of Corrections whether or not they can release him to parole. Although that document is not recorded in the docket, it appears to be an administrative oversight, we cannot ignore and engage in illegal fiction that Mr. Donovan wasn't issued a new minimus and was not issued a new judgment. So the recording of that new document on the docket shouldn't be controlled. And if there's administrative oversight that needs to be corrected, that's easily corrected by motion of the trial court. That shouldn't be controlled. Again, MAGWED focuses on the end result, not the procedure that we use to obtain the end result. The end result is a new judgment. Should I continue? I'm way over, so I don't know. You're at about eight minutes, so you might as well stop now and we'll do two minutes in rebuttal later. Thank you very much. Thank you, counsel. At this time, would counsel for the government please introduce himself on the record to begin? Good morning. May it please the court, Assistant Attorney General Gabriel Thornton for the respondent of the Massachusetts Rural Board. The petitioner's sentence was not reduced as a result of an intervening state court judgment. And therefore, the instant petition is a second or successive one and preauthorization from this court is required. Unlike in MAGWED, in the instant case, there was no new assessment of any of the evidence by the state court. Nor was there a similar new judgment and sentence intervening between the petitioner's two petitions. So help me understand this. Under the – when he was convicted, his sentence was that he would be confined in prison for life. That's correct. Now the Massachusetts courts have held that that sentence was invalid. That's correct, Your Honor. And so he's got a new sentence pursuant to which he's not confined in prison for life. Your Honor, the SJC and Diachenko said that his life sentence remains in full force, in effect, and explicitly said that Diachenko was not being re-sentenced. And therefore, this petitioner was also, like Diachenko, not re-sentenced. Well, suppose you had someone convicted of second-degree murder in Massachusetts and the sentence was then life imprisonment without parole. That would be invalid, wouldn't it? Yes, Your Honor. And someone would need to correct that, a court. Yes, Your Honor. And a court would correct that by changing the judgment so that it no longer said life imprisonment without parole. It would just say life imprisonment. In that instance, the mechanics, the practicalities of how that happened would be what would make the difference for an issue like this one. Why? I believe the second-degree murder statute, the statute that provides the punishment for second-degree murder, is a different statute than the one that provides the punishment for first-degree murder. I'm not as familiar with the terms of the statute that provides punishment for second-degree murder. But with the statute that is relevant here that provides it. Well, at the time he was convicted, it was one single statute, wasn't it, that had both in it? It may have been, Your Honor. I'm unsure. But if it was the same statute, that would support our argument because that statute talks about severability. And the SJC looked at the statute and determined that the parole eligibility part of the statute was severable from the rest of the statute. Are you saying the sentence is not part of the judgment? No, Your Honor. A sentence is part of the judgment. So what was the sentence that he previously had? It was a life sentence. That is how the SJC read the statute. What was it that it had before the SJC changed it? I understand, Your Honor, that in general we talk about parole eligibility as being part of the sentence. But in this case, we follow the language of the SJC that prisoners like the petitioner here were not the sentence. The parole eligibility part of the sentence was changed in a sense. There was no need to have another sentencing hearing. Are you saying all you had to do to correct the judgment was to, say, eliminate the statement that it was without possibility of parole? That's correct, Your Honor. And under Magler, when there was no sentencing hearing, then there is no new judgment that would allow this petitioner to file a second petition without authorization from this court. Are you contesting that if there is a new judgment, this would still be a second habeas petition? It would probably depend on the nature of that new judgment. Certainly, if there were an intervening hearing, a re-sentencing in Massachusetts without a state trial court, then that would be the sort of new judgment that would allow the petitioner to file a second. So you hinge it on whether there's a hearing or not. And what happened at that hearing? We would argue that there would need to be some way of the evidence at that hearing. But in this particular case, if you look what Diachenko was doing and why it was doing it, right, they laid out their reasoning. Kids are different, essentially. They adopted Miller's holding but applied it to a specific Massachusetts context. What more would there have been to do at a hearing for the juveniles implicated by Diachenko? There would not have been anything more to do. And that's the point, Your Honor, that individuals like the petitioner were not re-sentenced. Re-sentencing was not necessary. Well, based on that, if someone who was convicted of a crime and the maximum penalty under Massachusetts law was 10 years in prison and they were sentenced to 15 years, and they then appealed that after the fact and it was deemed to be an invalid sentence, it should have only been 10 years, unless there was a hearing, you would say that's not a new judgment? Yes, Your Honor. If the facts were similar to those in the case... So when the sentence was changed from a 15-year sentence to a 10-year sentence, you would say no new judgment? If the appellate court had not stated that it needed to be sent back to the trial court for re-sentencing, yes. Even though there's no need to send it back to make the relevant correction? That's correct. In that scenario, then there would be no re-sentencing that would allow a petitioner to file a second or successive petition without authorization from this court. I don't know a lot about state crime sentencing. In general, once a sentence is final, all appeals have been taken, habeas has been denied the first time. Is there any mechanism to reduce a sentence? In Massachusetts, I believe there is, Your Honor. I'm unsure on that, but in Massachusetts, a defendant can file a motion for retrial at any time. I apologize, I don't recall off the top of my head what that could mean for sentencing. Of course, in a first-degree murder case, there would be no discretion there for the trial court. As this court is probably aware, and as stated before, it is bound by state court's construction of its state statutes and other issues of state law. So I would argue that this court is bound by the SJC's reading of the first-degree murder statute in Diachenko. And when the SJC determined that Diachenko's sentence remained in full force and in effect, that this court should be bound by that construction of the relevant statute. There's a line in Watt talking about what, in effect, the holding in Diachenko meant. And I think Watt says it effectively reduced the mandatory life sentence for juveniles convicted of murder in the first degree. To the next most severe sentence under the sentencing statute. Do these later cases that sort of talk about what Diachenko was doing support the defendant's argument here? No, Your Honor, and I understand my brother's argument about some of those subsequent decisions and how they could arguably change what the SJC said in Diachenko. But if the SJC wanted to reverse Diachenko or abrogate it or limit it in any way, it would have said that. And I know my brother points to the Mattis case where the SJC, I believe, even talked about a quote resentencing or something to that effect. But as we state in our brief, it's really an offhand, imprecise reference by the SJC. And again, when we look at the language of Diachenko, when the SJC explicitly said he was not being re-sentenced, the life sentence continued to have full force in effect. The SJC was just severing the parole eligibility portion of the first degree murder sentence. None of those subsequent decisions changed that language from Diachenko. Well, just as a matter of policy of common sense, why should we care about whether the alteration in the sentence is achieved by direction of the SJC or is sent back to the district court and entered after a quote unquote hearing? Why should we care that that difference is dispositive of the issue we're looking at? I urge this court to look at the big picture, and as it's framed by the Supreme Court in Magwood, in terms of when it is appropriate to allow a habeas petitioner to proceed with a second or successive petition without prior authorization. And in a case like Magwood, where there were proceedings and a clear re-sentencing, under those facts, it does make sense for the petitioner to be allowed to file that second or successive petition without prior authorization. Things have changed under those facts, but under the facts of this case, nothing meaningful has changed that should allow a petitioner a second or successive filing of the Apple without prior authorization from this court. And you say nothing meaningful has changed? The difference between life without parole and life with an opportunity to parole, you don't think that's a big difference? It is a big difference, Your Honor. I meant nothing meaningful has changed in terms of what the petitioner should be allowed to challenge through a habeas petition. If the court has no further questions, I would ask you to affirm the decision. Are you familiar with the new Third Circuit case, which we've just been told about? No, Your Honor. I have not read that case. But as I state in the brief, all of the decisions from this Court's sister circuits that I've seen that we cited by the petitioner, the facts there were different. There was a re-sentencing, unlike anything that happened in this case. I can't say whether it would be true of that case that my brother discussed today. So to be clear on this, if the SJC had said, look, if you're under 18, you can't get a life sentence without parole. It has to be a parole. So we're going to send it back and order the trial court to modify the judgment accordingly. And then there's a hearing where they say this is what the SJC did and they modify it. You would say then he gets a new start on the habeas clock? It's a closer question, Your Honor. If there were no evidence received by the Superior Court in that instance, I'm not sure that that would be enough under Magwood, but it would be a closer question. But you say we never reached that because that isn't this situation because the Dachanko case relied on the severability clause. That's correct. And don't go further than we need to. That's correct, Your Honor. The SJC sentence was not re-sentenced in reliance on the severability clause. Is there any legislative history about Congress's use of the term judgment? The Supreme Court keeps admonishing us to not depart from the text. Not that I'm aware of, Your Honor. Any discussion of the meaning of the word judgment in that context that I'm aware of comes from Magwood. I don't recall discussion of the legislative history in Magwood. That's all there is. Magwood. Thank you. Thank you, counsel. At this time, counsel for the appellant has a two-minute rebuttal. Thank you. Again, Paul Donovan for the appellant, Joseph Donovan. Your Honor, I'd like to address this, again, fiction that a sentencing hearing was required by Magwood. It was not. Magwood does not require a sentencing hearing in order to have a new judgment. Magwood discusses a sentencing hearing because it happened. But Magwood involves actually a similar situation to this. The original sentence, the original judgment in Magwood was invalidated because the trial court failed to consider mitigating factors in determining whether or not Magwood should be sentenced to death. That judgment was invalidated. The trial court held an evidentiary hearing. That's not why the original judgment was invalidated, because the trial court held an evidentiary hearing. The trial court held an evidentiary hearing. After it was invalidated, it was determined the new judgment, the new sentence. Magwood in no way requires that there be a sentencing hearing at the trial court level in order for us to have a new judgment. Magwood focuses on the result. And as evidence of that, I have three cases that I'm going to give you that proves that you do not need to have a sentencing hearing at the trial court level. The first, again, another new case, Wilson v. Neal, 108, F4, 938. Seventh Circuit case. Not in our briefing, not afterwards. And in that case, the highest court in the state of Indiana issued a new judgment to a juvenile. And the Seventh Circuit said, that's a good new judgment for purposes of Magwood. And they specifically said it would serve no purpose to send this case back down to the trial court for resentencing when the highest court in the state had already done the job of the trial court. It wasn't necessary. It would be meaningless. So Wilson v. Neal, spot on point. We don't need to go back down to the trial court. A new sentence is a new judgment, whether it occurs at the trial court level or at the Supreme Judicial Court. May I continue? The last case and then you're done. Okay. First Circuit case. This is out of Puerto Rico. Melendez-Serrano v. Escobar-Pabon, 2024 Westlaw 458-7304. I will send you this in a letter. In that case, the appeals court reinstituted a trial court judgment without any hearing at the trial court level. It just automatically reinstituted the trial court judgment after the trial court itself vacated. The appeals court said, no, you've got to put it back. The district court, the First Circuit district court in Puerto Rico said, that's a good Magwood judgment. That's a new judgment for purposes of Magwood. There was no hearing. Nothing. No consideration of evidence whatsoever. It was just an invalidated prior judgment. That's why the invalid prior judgment standard works. Your time is up.